**HASBANI & LIGHT, P.C.**
Rafi Hasbani, Esq.
450 Seventh Avenue, Ste 1408
New York, New York 10123
T: 212-643-6677
F: 347-491-4048
E: rhasbani@hasbanilight.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION
-----------------------------------------------------------------X
In re:                                              Chapter 11

MALINKI SLONIK LLC                         Case No. 8-20-72239-AST

       Debtor.
-----------------------------------------------------------------X

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

**HASBANI & LIGHT, P.C.**
*Attorneys for Malinki Slonik LLC*
*Chapter 11 Debtor*

By: Rafi Hasbani, Esq.


450 Seventh Avenue, Suite 1408
New York, New York 10123
(212) 643-6677

**TABLE OF CONTENTS**

**ARTICLE I: DEFINITIONS**...……………………………………………………….......... 1

**ARTICLE II: CLASSIFICATION OF CLAIMS AND INTERESTS** ..................................... 8

**ARTICLE III: TREATMENT OF CLASSES** .......................................................... 8

**ARTICLE IV: MODIFICATION OF THE PLAN** ..................................................... 9

**ARTICLE V: EXECUTION AND IMPLEMENTATION OF THE PLAN** ........................... 9

**ARTICLE VII: OWNERSHIP AND MANAGEMENT** ........................................................ 11

**HASBANI & LIGHT, P.C.**
Rafi Hasbani, Esq.
450 Seventh Avenue, Ste 1408
New York, New York 10123
T: 212-643-6677
F: 347-491-4048
E: rhasbani@hasbanilight.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION
-----------------------------------------------------------------X
In re:                                               Chapter 11

MALINKI SLONIK LLC                                   Case No.: 8-20-72239-AST

        Debtor.
-----------------------------------------------------------------X

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

The following plan of reorganization dated June 12, 2020 (the "Plan") is hereby proposed by Malinki Slonik LLC the Chapter 11 debtor and debtor-in-possession (the "Debtor"), and filed by its attorneys, Hasbani & Light, LLP, pursuant to Chapter 11, Subchapter V of Title 11 of the United States Code (the "Bankruptcy Code").

### ARTICLE I: DEFINITIONS

For purposes of this Plan, the following terms have the meanings set forth below with the meanings to be equally applicable to the singular and plural forms of each term defined, unless a different meaning is clearly defined herein. Terms used in this Plan that are defined in the Bankruptcy Code will have the meaning assigned them therein.

1.01    "Property" means 211 Belmont Avenue, Westbury, New York 11590 designated as Nassau County Section 10, Block 183, Lot 935.

1.02    "Administrative Expense" means any cost or expense of the administration of the

1

Debtor's Chapter 11 case entitled to priority in payment in accordance with the provisions of Sections 503(b) and 507(a) of the Bankruptcy Code, or as may be allowed by Final Order, including, without limitation: (a) the actual and necessary costs and expenses of preserving the Debtor's estate (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Effective Date); (b) all allowances of compensation for legal or other services or reimbursement of costs and expenses under applicable sections of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court; and (c) any indebtedness or obligations incurred or assumed by the Debtor during the pendency of this Chapter 11 case. To the extent permitted under Section 506(b) of the Bankruptcy Code, an Administrative Expense includes unpaid interest and any reasonable unpaid fees, costs or charges provided for under the agreements under which that Administrative Expense arose.

1.03    "Allowed Administrative Expense" means any Administrative Expense, or portion thereof, which has been allowed by Final Order of the Bankruptcy Court.

1.04    "Allowed Claim" means a Claim, other than an Administrative Expense that is:

a)    listed in the Debtor's schedules, including any amendments thereto, filed in this Chapter 11 case as of the Effective Date and not listed as "disputed," "contingent," "unliquidated," or "unknown" and as to which no objection to the allowance thereof is filed; (b) set forth in a proof of Claim timely and properly filed in this Chapter 11 case on or before the deadline fixed by the Bankruptcy Court, or by applicable rule or statute, as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing having been given and as to which no objection to the allowance thereof is filed; (c) determined to be allowed by Final Order of the Bankruptcy Court, or (d) an amount that the Debtor is made aware of that it is obligated to pay. To the extent permitted under

Section 506(b) of the Bankruptcy Code, an Allowed Claim shall include unpaid interest on such Claim and any reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose.

1.05    "Allowed Priority Claim" means all or that portion of an Allowed Claim entitled to priority under Sections 507(a)(3), (4) and (6) of the Bankruptcy Code. Except as may be allowed by the Bankruptcy Court in the case of an Allowed Priority Tax Claim under Section 507(a)(8) of the Bankruptcy Code, any interest on such claim which accrued after the Petition Date, shall be part of the Allowed Priority Claim.

1.06    "Allowed Priority Tax Claim" means any Allowed Claim, or portion thereof, except an Administrative Expense, that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.07    "Allowed Secured Claim" means that portion of an Allowed Claim that is secured by a valid and perfected lien on property of the Debtor, to the extent of the value of the interest of the holder of such Allowed Secured Claim in the property of the Debtor as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, together with such interest (including interest accrued on or after the Petition Date) fees, costs, and charges as may be allowed by the Bankruptcy Court under Section 506(b) of the Bankruptcy Code.

1.08    "Allowed Unsecured Claim" means any Allowed Claim, or portion thereof, which is not an Allowed Administrative Expense Claim, an Allowed Secured Claim, an Allowed Priority Tax Claim or an Allowed Priority Claim.

1.09    "Plan" means this plan of reorganization and any amendments permitted in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.10    "Bankruptcy Code" means Title 11 of the United States Code, and any

amendments thereof applicable to this Chapter 11 case and in effect on the Petition Date.

1.11    "Bankruptcy Court" means the United States District Court for the Eastern District of New York and, to the extent of any reference made by such Court pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the Eastern District of New York or any other Court having lawful jurisdiction over this Chapter 11 case.

1.12    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, and any amendments or supplements thereto including any local bankruptcy rules adopted by the Bankruptcy Court.

1.13    "Chapter 11" means Chapter 11 of the Bankruptcy Code.

1.14    "Claim" means a claim as defined in Section 101(5) of the Bankruptcy Code whether or not asserted against the Debtor.

1.15    "Class" means any class into which Claims are classified pursuant to Article II of the Plan on the Effective Date.

1.16    "Confirmation Account" means the bank account to be established by the Distributing Agent to hold all funds necessary to make distributions under the Plan on the Effective Date, which bank account shall be a banking institution that is an authorized depository in the Eastern District of New York.

1.17    "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.18    "Confirmation Order" means the order issued by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.19    "Debtor" means Malinki Slonik LLC.

1.20    "Distribution" means the payments made by the Distributing Agent under the Plan

to holders of Allowed Claims and Allowed Administrative Expense Claims.

1.21    "Disputed Claim" means a Claim (other than an Allowed Claim), proof of which has been filed with the Bankruptcy Court and an objection to the allowance of which has been filed with the Bankruptcy Court and has been or is interposed prior to the final date of the filing of such objection set forth in the Confirmation Order or such other applicable period of limitations fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, and as to which such dispute or objection has not been determined by a Final Order; and pursuant to a judgment or order of a court of competent jurisdiction which judgment or order has been stayed or as to which judgment or order (or any revisions, modifications or amendments thereof) the Debtor's time to appeal or seek review or rehearing has not expired by reason of statute or otherwise; provided, however that (a) with respect to any Disputed Claim for which a proof of claim has not been filed with, or fixed by, the Bankruptcy Court in the amount of a sum certain, the amount of such disputed claim, shall, for purposes of the Plan, be fixed or liquidated by the Bankruptcy Court prior to the Confirmation Date under Section 502 of the Bankruptcy Code or may be fixed by an agreement in writing between the attorneys for the Debtor and the holder thereof, or such disputed claims may be fixed or determined by a final order entered after the Confirmation Date, and (b) the amount of any Disputed Claim may be such lesser amount of the amount in which such Disputed Claim was filed, as the Bankruptcy Court may order, or as the Debtor and the holder of such a Disputed Claim may agree upon in writing, and, provided further, that in no event shall any holder of a Disputed Claim if and when such Disputed Claim becomes an Allowed Claim, be entitled to receive from the Debtor an amount greater than the amount of such Disputed Claim so estimated or determined by the Bankruptcy Court or agreed upon by the Debtor and the holder thereof.

1.22    "Distributing Agent" means the Debtor.

1.23    "Effective Date" means fifteen (15) days from the later of (a) the Confirmation Order becoming a Final Order or (b) a judicial determination of the Adversary Proceeding by Final Order

1.24    "Estate" means the estate of the Debtor created under Section 541 of the Bankruptcy Code.

1.25    "Exculpated Parties" means the Debtor and any current agent, representative, attorney, accountant, financial advisor, broker or other professional of the Debtor.

1.26    "Fee Application" means any application of professionals under applicable provisions of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

1.27    "Fee Claim" means a Claim under an applicable provision of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court, for allowance of compensation and reimbursement of expenses to a professional in this Chapter 11 case.

1.28    "Final Order" means an order, judgment, decree, stipulation, or other agreement which is "so ordered" by the Bankruptcy Court, fourteen (14) days after the entry of which on the docket of the Bankruptcy Court, in these proceedings has not been reversed, stayed, modified or amended.

1.29    "Litigations" means any litigation commenced under this Chapter 11 case, including, without limitation, an adversary proceeding and other actions to avoid and recover preferential and fraudulent transfers.

1.30    "Member Interest" means the 100% membership interest in the Debtor held by Yonel Devico.

1.31    "Mortgage" means that certain mortgage dated March 21, 2006, and recorded on April 7, 2006, granted by Candida Saagber in favor of Impac Funding Corporation in the original amount of $297,600.00 and secured against the Property.

1.32    "Mortgage Holder" means Deutsche Bank National Trust Company, As Trustee Under the Pooling and Servicing Agreement Relating to IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2006-1 ("DBNTC") who allegedly currently owns the loan in connection with that certain loan made to Candida Saagber in favor of Impac Funding Corporation in the original amount of $297,600.00 and is currently secured to the Properties on account of the Mortgage.

1.33    "Petition Date" means June 15, 2020 the date the Debtor filed a voluntary petition for reorganization under Chapter 11 – Subchapter V of the Bankruptcy Code with the Bankruptcy Court.

1.34    "Priority Tax Claims" mean those Claims of governmental units that are entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.35    "Professional" means the attorneys and other professionals retained by the Debtor pursuant to Final Order of the Bankruptcy Court.

1.36    "Released Parties" means the Debtor, its respective officers, directors, members, general partners, managers or employees (acting in such capacity) and any professional person employed by any of them including attorneys.

1.37    "Nassau County" means County of Nassau, New York.

1.38    "Unclaimed Property" means any cash (together with any interest earned thereon) unclaimed on the 180th day following the Effective Date and subsequent distributions. Unclaimed Property includes: (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (b) checks (and the funds

represented thereby) which have not been paid; and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such check.

1.39    "Unsecured Creditor" means the holder of any Allowed Unsecured Claim.

## ARTICLE II: CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    The Plan provides for the creation of four (4) classes of claims and interest to be paid in the following manner:

2.01.1  *Class 1 Claims* – Costs and expenses of administration as defined in the Bankruptcy Code, 11 U.S.C. Section 507 (a)(1), (Such as legal fees and accountant fees) for which application for an allowance of a claim is filed prior to the effective date, as the same is allowed, approved and ordered paid by the Court.

2.01.2  *Class 2 Claims* – Allowed secured mortgage claim of DBNTC.

2.01.3  *Class 3 Claims* – The Unsecured Claim of DBNTC.

2.01.4  *Class 4 Claims* – The interest of the Debtor.

## ARTICLE III: TREATMENT OF CLASSES

The Plan provides for the creation of four (4) classes of claims and interest to be paid in the following manner:

3.01    *Class 1:* Costs and expenses of administration as defined in the Bankruptcy Code, including, among other things, legal fees, and post-petition accounts payable, will be paid in cash, in full, on the effective date of the Plan. At the present time, it is estimated that administration expenses will consist of the following: Hasbani & Light, P.C., attorney for the debtor - $15,000.00 of which $3,500.00 was paid in a retainer. Therefore, the estimated administrative costs total $15,000.00 of which $3,500.00 has already been paid, leaving a

balance of $11,500.00. This class is not impaired by the Plan, and its vote will not be solicited.

3.01    *Class 2:* The secured creditor DBNTC allegedly holds a first mortgage lien against the debtor's Property. DBNTC has yet to file a proof of claim Debtor's Motion to Value the Collateral at $135,000.00 is currently pending before this court. Should this court grant Debtor's Motion to Value the Collateral, the value of the alleged secured claim will be $135,000.00. Debtor shall make a payment of $120,000.00 to DBNTC to satisfy this class within 30 days of approval of this Plan. This Class is impaired.

3.02    *Class 3:* The total alleged Unsecured Claim of DBNTC should this court grant Debtor's Motion to Value the Collateral will be $205,640.10. This sum is the alleged outstanding balance allegedly owed to DBNTC of $340,640.10 minus the Value of the Property of $135,000.00. Debtor shall make a payment of $1,000.00 to DBNTC to satisfy this class within 30 days of approval of this Plan. This Class is impaired.

3.03    *Class 4:* The interest of the Debtor. The Debtor shall retain ownership of the Property. This Class is not impaired.

## ARTICLE IV: MODIFICATION OF THE PLAN

4.01    The Debtor may propose amendments and/or modifications of this Plan at any time prior to confirmation, with leave of the Court, upon such notice as the Court shall direct. After confirmation, the debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation in such manner as may be necessary to carry out the purposes and effects of this Plan.

## ARTICLE V: EXECUTION AND IMPLEMENTATION OF THE PLAN

5.01    The funds necessary for the satisfaction of the claims to creditors will be

generated by the DIP Financing obtained by the Debtor, and the personal funds of Yonel Devico. Upon confirmation, the reorganized debtor shall be entitled to manage his affairs without further Order of this Court. However, the Court will retain jurisdiction for the purposes set forth below.

## ARTICLE VI: JURISDICTION OF THE COURT

6.01    The Court will retain jurisdiction until the Plan has been fully consummated, including, but not limited to, the following purposes:

6.01.1    The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to the creditors' claims. The failure by the Debtor to object to, or to examine any claim for the purposes of voting, shall not be deemed to be a waiver of the debtor's right to object to, or re-examine, the claim in whole or in part.

6.01.2    Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the debtor and any other party, including, but not limited to, any right of the debtor to recover assets pursuant to the provisions of Title 11 of the United States Code.

6.02.3    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intents of this Amended Plan.

6.02.4    The modification of this Plan after confirmation pursuant to the Federal Rules of Bankruptcy Procedure and Title 11 of the United States Code.

6.02.5    The enforcement and interpretation of the terms and conditions of this Plan.

6.02.6    Entry of any Order, including injunctions, necessary to enforce the title, rights and powers of the debtor and to impose such limitations, restrictions, terms and conditions of such title, rights, and powers as this Court may deem necessary.

6.02.7    The hearing of any matter brought on upon proper application by any creditor claiming that payments pursuant to the Plan have not been properly made either in terms of the amount of the payment or the time it was to have been made.

6.02.8    Entry of an Order concluding and terminating this case.

## ARTICLE VII: OWNERSHIP AND MANAGEMENT

7.01    Ownership: The Debtor shall retain ownership of itself.

7.02    Management: The Debtor shall retain management over itself.

Dated: June 17, 2020
      New York, New York

                  **HASBANI & LIGHT, P.C.**
                  *Attorneys for the Debtor*

        By:    /s/ Rafi Hasbani
                450 Seventh Avenue, Ste 1408
                New York, New York 10123
                (212) 643-6677

Dated: June 17, 2020
      Miami Beach, Florida

                  **MALINKI SLONIK LLC**
                  *Chapter 11 Debtor*

        By:    *Yonel Devico*
        Name:  Yonel Devico
        Title:   Managing Member