

$66,000.00

## DEBTOR IN POSSESSION CREDIT AGREEMENT

by and between

### MALINKI SLONIK LLC

as Debtor and Debtor in Possession and

### LOYD FUNDING, LLC

as Lender

Dated as of June __, 2020

  DEBTOR IN POSSESSION CREDIT AGREEMENT, dated as of June____, 2020, by and between Malinki Slonik LLC, as debtor and debtor in possession under Chapter 11 of the Bankruptcy Code (as defined below)  (the "Borrower")  and Loyd Funding LLC, as lender under Chapter 11 of the Bankruptcy Code (together with its successors and permitted assigns, the "Lender").

RECITALS:

A.     On June 15, 2020 (the "Commencement Date") , the Borrower filed a voluntary petition for relief (the "Chapter 11 Case")  under Chapter 11 – Subchapter V of Title 11 of the United States Code (the "Bankruptcy Code")  with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

B.     The Borrower is continuing to operate its business and manage its property as debtor in possession under sections 1107(a)  and 1108 of the Bankruptcy Code.

C.     The Borrower has requested that the Lender provide Loan under a superpriority non-amortizing single draw term loan facility to the Borrower in an aggregate principal amount of $66,000.00 in order to ensure sufficient liquidity to the Borrower as debtor in possession under the Bankruptcy Code.

D.     The Lender is willing to make available to the Borrower such a postpetition loan upon the terms and subject to the conditions set forth herein.

  Now, therefore, in consideration of the premises and the covenants contained herein, the parties hereto hereby agree as follows:

## 1.     DEFINITIONS

1.1     Definitions. As used in this Agreement, the following terms have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

1.2     "Affiliate" means, with respect to any Person, each officer, director or general partner of such Person and any other Person that directly or indirectly controls, is controlled by, or is under common control with, such Person. For purpose of this definition, *"control"* means the possession of either (a) the power to vote, or the beneficial ownership of, 10% or more of the Voting Stock of such Person or (b) the power to direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

1.3     "Agreement" means this Agreement, as the same may be amended, supplemented or otherwise modified from time to time.

1.4     "Bankruptcy Code" has the meaning specified in the recitals to this Agreement.

1.5     "Bankruptcy Court" has the meaning specified in the recitals to this Agreement.

1

1.6     "Borrower" has the meaning specified in the preamble to this Agreement.

1.7     "Business Day" means a day of the year on which banks are not required or authorized to close in New York City.

1.8     "Chapter 11 Case" has the meaning specified in the recitals to this Agreement.

1.9     "Closing Date" has the meaning specified in Section 3.1.

1.10    "Commencement Date" has the meaning specified in the recitals to this Agreement.

*1.11*    "Debt" means (a) indebtedness for borrowed money (b) obligations evidenced by bonds, debentures, notes or other similar instruments and obligations to pay for the deferred purchase price of property or services, in each case other than obligations to make milestone, progress and similar payments, obligations under trade credit incurred in the ordinary course of business, and other credit from suppliers incurred in the ordinary course of business in connection with the goods or services supplied (whether or not evidenced by a promissory note or a credit agreement), (c) obligations as lessee under leases that have been recorded as capital leases in accordance with GAAP and the present value of all future rental payments under all synthetic leases and (d) obligations under direct or indirect guaranties in respect of, and obligations (contingent or otherwise) to purchase or otherwise acquire, or otherwise to assure a creditor against loss in respect of, obligations of others of the kinds referred to in *clauses* (a) through *(c)* above.

1.12    "Default" means an event which, with the giving of notice or lapse of time, or both, would constitute an Event of Default.

1.13    "DIP Facility" means this superpriority non-amortizing single draw loan facility in a principal amount of $66,000.00 of which will be made available to the Borrower at the Closing Date and prior to the entry of the DIP Order.

1.14    "DIP Order" means the Final DIP Order.

1.15    "Dollars" and "$" mean the lawful currency of the United States of America.

*1.16*    "Event of Default" has the meaning specified in Section 6.1.

1.17    "Final DIP Order" means an order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing under Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure, in form and substance satisfactory to the Lender, which, on a final basis, among other things, approves this Agreement, including the superpriority status, security interests and liens described herein, and the other Loan Documents, as to which no stay has been entered and that has not been reversed, modified, supplemented, vacated or overturned without the prior written consent of the Lender; *provided, however,* that, if such consent is

obtained, "Final DIP Order" shall then include such supplement, reversal, and other modification.

1.18    "GAAP" means generally accepted accounting principles in the United States of America as in effect from time to time set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and the statements and pronouncements of the Financial Accounting Standards Board, or in such other statements by such other entity as may be in general use by significant segments of the accounting profession, that are applicable to the circumstances as of the date of determination, applied consistently with the principles used in the preparation of the latest financial statements of the Borrower delivered to the Lender prior to the date hereof.

1.19    "Governmental Authority" means any federal, state, municipal, national, supranational or other government, governmental department, commission, board, bureau, court, agency, central bank or instrumentality or political subdivision thereof or any entity, officer or examiner exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to any government or any court, in each case whether associated with a state of the United States, the United States, or a foreign entity or government.

*1.20*    "Indemnitees" has the meaning specified in *Section 7.9.*

1.21    "Law" means any federal, state, local, municipal, foreign, international, multinational or other constitution, statute, law, rule, regulation, ordinance, code, principle of common law or treaty.

1.22    "Lender" has the meaning specified in the preamble to this Agreement.

1.23    "Lien" means any mortgage, deed of trust, pledge, hypothecation, assignment, charge, deposit arrangement, encumbrance, easement, lien (statutory or other), security interest or other security arrangement and any other preference, priority, or preferential arrangement of any kind or nature whatsoever, including any conditional sale contract or other title retention agreement, the interest of a lessor under a capital lease, and any synthetic or other financing lease having substantially the same economic effect as any of the foregoing.

*1.24*    "Loan" has the meaning specified in *Section 2.1.*

1.25    "Loan Documents" means this Agreement, any other document or instrument executed and delivered by the Borrower to the Lender in connection with this Agreement, and the DIP Order.

1.26    "Maturity Date" means the earliest of (a) the Scheduled Maturity Date, (b) the effective date of a plan of reorganization in the Chapter 11 Case or (c) the date of termination of the Lender's commitments and the acceleration of any outstanding

extensions of credit or other Obligations under the Loan Documents.

1.27    "New York Courts" has the meaning specified in *Section 7.11. "Notice of Borrowing"* has the meaning specified in *Section 2.1(b).*

1.28    "Obligations" means all Loan (including, the Loan), advances, debts, liabilities, obligations, covenants and duties of any kind or nature, present or future, whether or not evidenced by any note, guaranty or other instrument, due to the Lender from the Borrower and arising under any Loan Document, whether or not for the payment of money, whether arising by reason of an extension of credit, guaranty, indemnification, or in any other manner, whether direct or indirect (including those acquired by assignment), absolute or contingent, due or to become due, now or hereafter arising and however acquired, including all interest, charges, expenses, fees (including attorneys' fees) and other amounts chargeable to the Borrower under any Loan Document.

1.29    "Person" means any individual, partnership, corporation (including a business trust and a public benefit corporation), joint stock company, estate, association, firm, enterprise, trust, limited liability company, unincorporated association, joint venture and any other entity or Governmental Authority.

1.30    "Permitted Liens" means all of the following:

(a)    statutory liens for Taxes not yet due;

(b)    statutory liens of landlords, carriers, warehousemen, mechanics and materialmen incurred in the ordinary course of business for sums not yet due;

(c)    liens incurred or deposits made in the ordinary course of business in connection with workers' compensation, unemployment insurance and other types of social security;

(d)    zoning Laws and other land use restrictions that do not materially impair the present or anticipated value or use of the encumbered asset;

(e)    in the case of leased property, all matters, whether or not of record, affecting the title of the lessor (and any underlying lessor) that do not materially impair the present or anticipated value or use of the encumbered asset;

(f)    liens expressly permitted under the DIP Orders; and

(g)    valid and perfected liens of record in any Property of the Borrower as of the Commencement Date.

1.31    "Property" means any interest in any kind of property or asset, whether real, personal or mixed, and whether tangible or intangible.

1.32    "Scheduled Maturity Date" means one year from the date of execution of the Interim Order.

1.33    "Stock" means all shares of capital stock (whether denominated as common stock

or preferred stock), equity interests, beneficial, partnership or membership interests, joint venture interests, participations or other ownership or profit interests in or equivalents (regardless of how designated) of or in a Person (other than an individual), whether voting or non-voting.

1.34    "Tax" means (i) all income taxes (including any tax on or based upon net income, or gross income, or income as specially defined, or earnings, or profits, or selected items of income, earnings, or profits) and all gross receipts, estimated, sales, use, ad valorem, transfer, franchise, license, withholding, payroll, employment, excise, severance, stamp, occupation, premium, property, or windfall profit taxes, unpaid property taxes, environment, alternative, or add-on minimum taxes, custom duties or other taxes, fees, assessments, or charges of any kind whatsoever, together with any interest and any penalties, additions to tax or additional amounts and (ii) any obligation to indemnify or otherwise assume or succeed to any liability described in *clause (i)* hereof of any other Person whether by contract or under common law doctrine of de facto merger and successor liability or otherwise.

1.35    "Voting Stock" means capital stock of any Person having ordinary power to vote in the election of members of the board of directors, managers, trustees, or other controlling Persons, of such Person (irrespective of whether, at the time, capital stock of any other class shall have or might have voting power by reason of the occurrence of any contingency).

1.36    Certain Terms. In this Agreement, in the computation of periods of time from a specified date to a later specified date, the word *"from"* means "from and including," the words *"to"* and *"until"* each mean "to but excluding," and the word *"through"* means "to and including." The words *"include," "includes,"* and *"including"* mean, respectively, "include without limitation," "includes without limitation," and "including without limitation." The word *"or"* does refer to an exclusive choice.

1.37    Accounting Terms. All accounting terms not specifically defined herein shall be construed in conformity with GAAP, and all accounting determinations required to be made pursuant hereto shall, unless expressly otherwise provided herein, be made in conformity with GAAP.

1.38    Internal Cross References. The words *"herein," "hereof,"* and *"hereunder"* and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section, subsection, or clause in this Agreement.

1.39    Legislation. Unless the context otherwise requires, references to any legislation or administrative rule or regulation include references to any amendment or modification of such legislation, rule, or regulation, to any successor legislation, rule, or regulation and to any subordinate legislation, rule, or regulation made thereunder.

## 2.    AMOUNT AND TERM OF THE LOAN

2.1    The Loan. The Lender may, in its sole discretion and otherwise on the terms and subject to the conditions hereinafter set forth, make a superpriority non-amortizing term loan to the Borrower on or after the Closing Date in the principal amount of Sixty Six Thousand Dollars and Zero Cents ($66,000.00)  of which all of the principal amount will be made available to the Borrower upon the execution of the Final DIP Order and prior to the Maturity Date (the "Loan") . The Loan shall become due and payable on the Maturity Date. Amounts repaid may not be reborrowed.

2.2    Use of Proceeds. The Borrower shall apply proceeds of the Loan to fund (a) postpetition operating expenses of the Borrower incurred in the ordinary course of business, (b) costs and expenses of administration and as provided for in the DIP Order and (c) working capital, capital expenditures, and other general corporate purposes of the Borrower, in the case of each of clauses (a) and (b) above.

2.3    Repayment of Loan; Evidence of Debt. (a) The Borrower shall repay the Loan in full, in immediately available Dollars, on the Maturity Date; (b) The Lender shall, maintain an account evidencing all Debt of the Borrower to the Lender resulting from the Loan, including, without limitation, the amounts of principal and interest payable and paid to the Lender or credited against the Loan from time to time under this Agreement. The entries made in such account shall, absent manifest error and to the extent permitted by applicable law, be *prima facie* evidence of the existence and amounts of the obligations recorded therein; *provided, however,* that the failure of the Lender to maintain such an account or any error therein shall not in any manner affect the obligation of the Borrower to repay the Loan in accordance with the terms hereof.

*2.4*    Interest.

(a)    Rate of Interest. The Loan and the outstanding principal balance of all other Obligations shall bear interest on the unpaid principal amount thereof from the date such Loan were made and such other Obligations are due and payable until paid in full, and except that such interest rate shall not exceed the maximum rate permitted by applicable law, at a rate equal to ten (10.00) percent per annum;

(b)    Interest Payments.  Interest shall accrue and be payable monthly, in arrears, beginning at the end of the first full calendar month after the Closing Date, and at maturity whether by acceleration or by the occurrence of the Maturity Date.

2.5    Payments and Computations. (a) The Borrower shall make each payment under any Loan Document of principal of and interest on the Loan and other Obligations, without set off, counterclaim, condition or reservation of right, in immediately available Dollars, not later than 5:00 P.M. (New York City time) on the day when due to the Lender at its address referred to in *Section* 7.*3* or such address in the United States as may be notified by the Lender to the Borrower; (b) All computations of interest shall be made by the Lender on the basis of a year of 365 or 366

days, as applicable, and the actual number of days elapsed (including the first day but excluding the last day); (c) Whenever any payment under any Loan Document shall be otherwise required to be made on a day other than a Business Day, such payment shall be required to be made on the next succeeding Business Day, and such extension of the time shall in such case be included in the computation of payment of interest.

2.6     Illegality. Notwithstanding anything to the contrary contained herein, if the Lender determines in its reasonable judgment that it has become unlawful for the Lender to make, fund, or maintain the Loan, then the Lender may give the Borrower notice thereof, at which time the Borrower shall pay or prepay the Loan (without premium or penalty), together with all accrued interest thereon and all fees and other amounts payable to the Lender under any Loan Document.

2.7     Liens and Security Interests; Priority. All Obligations shall be secured by first priority liens under section 364(c) of the Bankruptcy Code, and shall constitute allowed superpriority administrative expense claims in the Chapter 11 Case, all as more fully set forth, and subject only to the limitations set forth in the DIP Order, as applicable.

3.     CONDITIONS TO LENDING AND EFFECTIVENESS

3.1     Conditions Precedent to Effectiveness. This Agreement shall be effective on the date (the "Closing Date") of fulfillment of all of the following conditions precedent on and as of such date: (a) the Borrower shall have commenced the Chapter 11 Case in the Bankruptcy Court; (b) the Bankruptcy Court shall have entered the DIP Order, in form and substance satisfactory to the Lender in its sole discretion, authorizing and approving, among other things, the DIP Facility, this Agreement and the transactions contemplated thereby, and (c) either (i) the Borrower shall have filed a motion with the Bankruptcy Court seeking approval of this Agreement or (ii) the Lender shall be satisfied in its sole discretion that the transactions contemplated by this Agreement Agreement are likely to proceed, in the case of each of (i) and (ii) above, on terms satisfactory to the Lender.

(a)     The representations and warranties made in *Article 4* shall be true and correct on and as of such date, before and after giving effect to the Loan and to the application of the proceeds therefrom, as though made on and as of such date;

(b)     no Default or Event of Default shall exist under the Loan;

(c)     The Lender shall have received all of the following on or before such date, each in for and substance satisfactory to it:

(i)     this Agreement duly executed by the Borrower;

(ii)     true and complete copies of the certificate of formation and the by-laws of the Borrower and copies of the written consent of the duly authorized representative of the Borrower approving all Loan Documents to be delivered on or before such date and copies of all documents evidencing other necessary corporate action and governmental approvals, if any, with respect to such Loan

7

Documents;

       (iii)      a certificate, signed by a duly authorized officer of the Borrower and dated such date, stating that the conditions set forth in *clauses (c)* and *(d)* above have been satisfied as of such date;  and

       (iv)      a certificate from the Borrower, certifying the names and true signatures of the Persons authorized to sign the Loan Documents on behalf of the Borrower.

## 4.      REPRESENTATIONS AND WARRANTIES

      4.1    *Representations and Warranties of the Borrower.* The Borrower represents and warrants on the Closing Date and on the date of the making of each Loan as follows:

       (a)      The Borrower is a limited liability company, validly existing and in good standing under the laws of its jurisdiction of organization and has the authority to own its assets and to transact the business in which it is now engaged or proposed to be engaged.

       (b)      The execution, delivery, and performance by the Borrower of the Loan Documents have been duly authorized by all necessary corporate actions and do not and will not (i) contravene its organizational documents , (ii) violate any provision of, or require any filing, registration, consent or approval under, any material law, rule, regulation, order, writ, judgment, injunction, decree, determination, or award applicable to the Borrower, or (iii) subject to entry of the DIP Order, as applicable, result in a breach of, or constitute a default or require any consent or result in the creation of a Lien under, any material indenture, lease, instrument, or other agreement to which the Borrower is a party or by which the Borrower or its properties may be bound or affected.

       (c)      The Loan Documents has been duly executed and delivered by the Borrower and, subject to entry of the DIP Order, constitutes its legal, valid, and binding obligation enforceable against it in accordance with its terms subject to the Bankruptcy Code.

       (d)      Except for the DIP Order, no authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery, and performance by the Borrower of the Loan Documents.

       (e)      There is no pending or threatened action, proceeding, or investigation affecting the Borrower before any court, commission, agency, or instrumentality of the federal or any state or municipal government or any agency or subdivision thereof or before any arbitration that purports to materially adversely affect the legality, validity, or enforceability of the Loan Documents.

(f)    On and after the Closing Date, (i) all Obligations shall have the priority in payment and shall be secured as provided in the DIP Order, and the transactions contemplated hereby and thereby are in full force and effect and have not been vacated, reversed, modified, amended, or stayed without the prior written consent of the Lender.

5.    COVENANTS OF THE BORROWER

5.1    *Affirmative Covenants.* Until all the Obligations (other than contingent obligations) are paid in full, the Borrower shall do all of the following unless the Lender shall otherwise consent in writing:

(a)    at all times maintain its corporate existence and preserve and keep in full force and effect its rights, privileges, and franchises necessary or desirable to its business;

(b)    comply in all respects with all material applicable laws, rules, regulations, orders, permits, and licenses;

(c)    maintain at all times insurance in such amounts and against such risks as is common industry practice;

(d)    keep proper books of record and account in which entries in conformity with GAAP shall be made of all dealings and transactions in relation to its business and activities;

(e)    permit the Lender and its representatives, during normal business hours and with reasonable prior notice and (other than during the continuance of a Default or Event of Default) at the Lender's expense, to inspect its facilities and its books and records and to discuss its affairs, finances and accounts with its officers and employees;

(f)    on Wednesday of each week after the Closing Date, provide to the Lender a reconciliation showing actual receipts and disbursements for the preceding week against the DIP Budget. The DIP Budget may be updated from time to time, and shall be updated at least monthly to reflect a full 13 week period, in all cases subject to the Lender's approval. On a regular basis upon request from the Lender, the Borrower shall meet with the Lender to review the DIP Budget and reconciliations provided to the Lender;

(g)    within 20 days after the end of each fiscal month of the Borrower, the Borrower shall deliver to the Lender an unaudited consolidated balance sheet as at the end of such month, together with unaudited consolidated statements of operations and cash flows for such month; and

(h)    execute and deliver from time to time to the Lender all such further

documents and instruments and do all such other acts and things as may be reasonably required by the Lender to enable the Lender to exercise and enforce its rights hereunder and under the other Loan Documents.

5.2    *Negative Covenants.* As long as any Obligations (other than contingent obligations) remain outstanding, the Borrower agrees that it will not do any of the following without the prior written consent of the Lender:

(a)    create or suffer to exist any Lien upon or with respect to any of its Property, whether now owned or hereafter acquired, or assign any right to receive income, in each case to secure or provide for the payment of any Debt of any Person, other than Permitted Liens;

(b)    suffer or permit it or any of its subsidiaries to, directly or indirectly, sell, assign, lease, convey, transfer or otherwise dispose of (whether in one or a series of transactions) any Property (including the Stock of any subsidiary of the Borrower, whether in a public or private offering or otherwise, and accounts and notes receivable, with or without recourse);

(c)    directly or indirectly create, incur, assume or otherwise become or remain directly or indirectly liable with respect to any Debt, except for (i) the Obligations, (ii) any Debt existing on the date hereof, and (iii) any Debt secured by Permitted Liens; and

(d)    except as expressly contemplated hereby, engage in any transaction with any Affiliate on terms more favorable to such Affiliate than would have been obtainable in an arm's-length dealing except for transactions in the ordinary course of business that do not materially adversely affect the ability of the Borrower to repay the Obligations when due.

6.    EVENTS OF DEFAULT

6.1    *Events of Default.* If any of the following shall occur and be continuing (each an *"Event of Default"*):

(a)    the failure to pay interest, principal or any other amounts payable hereunder as and when due, which failure is not cured within one (1) day after written notice of such default is given by the Lender to Borrower; or

*(b)*    the Borrower shall fail to observe or perform (i) any provision of *Section 5.2* or (ii) any provision of any Loan Document (other those described in *Section 6.1(c)* or *clause (i)* of this *Section 6.1(a))* for more than five Business Days; or

(c)    any representation or warranty made by the Borrower in any Loan Document or in any certificate, agreement or statement delivered to the Lender in connection with any Loan Document shall prove to have been incorrect in

any material respect when made; or

(d)     without the consent of the Lender, any Loan Document shall, at any time after its execution and delivery, cease to be in full force and effect or shall be declared null and void, or the validity or enforceability of any Loan Document shall be contested by the Borrower, or the Borrower shall deny that it has any further liability or obligation under any Loan Document; or

(e)     (i) the Chapter 11 Case shall be dismissed (or the Bankruptcy Court shall make a ruling requiring the dismissal of the Chapter 11 Case) or converted to a case under chapter 7 of the Bankruptcy Code, (ii) any order shall be entered permitting, or the Borrower shall file any pleading requesting, any such relief, or (iii) the Borrower shall have any obligation to make adequate protection payments, or otherwise provide adequate protection, other than as approved by the Lender or provided in a DIP Order; or

(f)     (i) the DIP Order shall cease to be in full force and effect, (ii) the Borrower shall fail to comply with the terms of the DIP Order in any material respect, (iii) either DIP Order shall be amended, supplemented, stayed, reversed, vacated, or otherwise modified (or the Borrower shall apply for authority to do so) without the prior written consent of the Lender or (iv) any Obligation shall cease to be an allowed secured claim of the Borrower in the Chapter 11 Case having the priority and collateral security as provided in the DIP Order; or

(g)     the Bankruptcy Court shall enter an order appointing a receiver, examiner or trustee in the Chapter 11 Case; or

(h)     the Borrower shall seek to, or shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party in interest executed by or on behalf of the Borrower) any other Person's motion to, disallow in whole or in part any claim of the Lender in respect of the Obligations or its priority or collateral security; or

(i)     the DIP Order is not entered within 30 Business Days from the Commencement Date; or

(j)     any of the Loan Documents, the DIP Order shall be amended or modified in a manner that is unacceptable to the Lender, or the Borrower shall file a motion or pleading seeking such relief; or

(k)     if (i) actual disbursements under any line item of the DIP Budget for any four week rolling period exceed the budgeted disbursements for such period in such line item by more than ten (10) percent, or (ii) aggregate actual disbursements under the DIP Budget for any four week rolling period exceed the aggregate budgeted disbursements for such four week rolling period by more than five (5) percent, unless the Lender consents in writing to such

deviation; or

(l)      if (i) actual receipts under any line item of the DIP Budget for any four week rolling period are less than the budgeted receipts for such period in such line item by more than ten (10) percent, or (ii) aggregate actual receipts under the DIP Budget for any of four week rolling period are less than the aggregate budgeted receipts for such four week rolling period by more than five (5) percent, unless the Lender consents in writing to such deviation; or

then, and in any such event, the Lender may, by notice to the Borrower and without the need to seek any further relief from the Bankruptcy Court, (a) declare all or any portion of the Obligations to be forthwith due and payable, whereupon such Obligations or such portion shall become and be forthwith immediately due and payable, without presentment, demand, protest, or further notice of any kind, all of which are hereby expressly waived by the Borrower; (b) commence foreclosure on collateral and take such action, without notice or demand as it deems advisable to protect and enforce its rights against the collateral and in and to the collateral; and (c) subject solely to any requirement of the giving of notice under the terms of the DIP Order, as applicable, the automatic stay provided in section 362 of the Bankruptcy Code shall be deemed automatically vacated without further action or order of the Bankruptcy Court and the Lender shall be entitled to exercise all of its rights and remedies under the Loan Documents and applicable law.

7.    MISCELLANEOUS

7.1    *Amendments, Etc.* No amendment or waiver of any provision of any Loan Document, nor consent to any departure by the Borrower therefrom, shall be effective unless the same shall be in writing and signed by the Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

7.2    *Headings.* The headings and table of contents are included in this Agreement for convenience only and shall not in any way affect the meaning of or interpretation of this Agreement.

7.3    *Notices, Etc.* All notices and other communications provided for hereunder shall be in writing and mailed, or delivered, as follows:

(a)      if to the Borrower, addressed to:
Malinki Slonik LLC
Attn: Yonel Devico
1688 Meridian Avenue, Ste 610
Miami Beach, Florida 33139

with a copy to:
Hasbani & Light, P.C,
Attn: Rafi Hasbani, Esq.

450 Seventh Avenue, Ste 1408
New York, New York 10123
Email: rhasbani@hasbanilight.com

If to the Lender, addressed to:
Loyd Funding, LLC
3403 NE 171st St
North Miami Beach FL 33160

or, as to each party, at such other address as shall be designated by such party in a written notice to the other party. All such notices and communications shall be effective, if e-mailed or telecopied, when e-mailed or telecopied, or, if mailed or delivered, when actually received.

7.4    *No Waiver; Remedies.* No failure on the part of the Lender to exercise, and no delay in exercising, any right under any Loan Document shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

7.5    *Costs, Expenses and Taxes.* The Borrower agrees to pay on demand, all costs and expenses (including reasonable fees and expenses of counsel), in connection with (i) the negotiation, execution and delivery of this Agreement, and in connection with the other Loan Documents, (ii) the enforcement (whether through negotiations, legal proceedings or otherwise) of the Obligations and any Loan Document. In addition, the Borrower shall pay any and all stamp and other taxes payable or determined to be payable in connection with the execution and delivery of any Loan Document to be delivered hereunder and agrees to save the Lender harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omission to pay such taxes.

7.6    *Binding Effect; Assignment.* This Agreement shall be effective as of the Closing Date and shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns (including any trustee appointed in the Chapter 11 Case or appointed if the Chapter 11 Case is conve1ted to a case under Chapter 7 of the Bankruptcy Code), except that the Borrower shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of the Lender. The Lender may assign (including for collateral purposes) all or a portion of its rights and obligations under this Agreement upon notice to the Borrower.

7.7    *Execution in Counterparts.* This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. One or more counterparts of this Agreement (or portions hereof) may be delivered via e-mail, with the intention that they shall have the same effect as an original counterpart hereof (or such portions hereof). All signature pages need not be on the same counterpart.

7.8    *Entire Agreement; Severability of Provisions.* The Loan Documents contain the entire agreement of the parties hereto and supersede all prior agreements and understandings, oral and otherwise, among the parties hereto with respect to the matters contained in the Loan Documents. If any provision of this Agreement, or the application thereof to any Person or circumstance, is invalid or unenforceable or contravenes any law, regulation or document applicable to such Person, such provision or application shall be deemed ineffective *ab initio,* but the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby, and the provisions of this Agreement shall be severable in any such instances.

7.9    *Indemnification.* The Borrower agrees to indemnify the Lender and its Affiliates and each of their respective directors, officers, volunteers, agents, attorneys and employees, and the successors and assigns of the foregoing (collectively, *"Indemnitees"),* from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against any Indemnitee in any way relating to or arising out of the Loan Documents, the DIP Order, any related transactions (whether actual or proposed) or any action taken or omitted by the Lender under the Loan Documents or the DIP Order; *provided, however,* that the Borrower shall not be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from the bad faith, gross negligence, or willful misconduct of such Indemnitee as determined by a court of competent jurisdiction in a final non-appealable judgment. The foregoing agreements shall survive the making and repayment of the Obligations.

7.10    *Governing Law.* This Agreement shall be governed by, and construed in accordance with, the law of the State of New York and any applicable laws of the United States of America, including the Bankruptcy Code.

7.11    *Consent to Jurisdiction.* The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of the Loan Documents and to decide any claims or disputes that may arise or result from, or be connected with, the Loan Documents, and any breach or default thereunder. Any and all claims or disputes, causes of action, suits and proceedings relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent and submit to the jurisdiction of the Bankruptcy Court. If the Bankruptcy Court determines that it does not have subject matter jurisdiction over any action or proceeding arising out of or relating to the Loan Documents then said action shall be filed in the United States District Court for the Eastern District of New York. BOTH THE BORROWER AND THE LENDER HEREBY WAIVES TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER IN ANY WAY ARISING OUT OF, RELATED TO OR CONNECTED WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

**MALINKI SLONIK LLC**
as Borrower

By: _____
Name:_____
Title: _____


**LOYD FUNDING, LLC**
as Lender

By: _____
Name:_____
Title: _____